UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 26-62543-CIV-SINGHAL

ROLANDO ABEL REYES DE LA ROSA,

Petitioner,

vs.

WARDEN, BROWARD TRANSITIONAL CENTER, *et al.*,

Respondents.
_________________________________/

**ORDER DENYING PETITION FOR HABEAS CORPUS**

**THIS CAUSE** is before the Court upon Petitioner's Petition for Writ of Habeas Corpus (the "**Petition**") (DE [1]). Petitioner is a Cuban citizen who was paroled into the United States under the Cuban Haitian Nicaraguan Venezuelan ("CHNV") parole program. After the expiration of his parole, Petitioner was taken into immigration custody. Petitioner submits that he is detained pursuant to 8 U.S.C. § 1226(a), entitled to a bond hearing thereunder, and that Respondents violate due process by withholding same. For the reasons discussed below, the Court disagrees.

I. BACKGROUND

Petitioner is a native and citizen of Cuba. (DE [1] ¶ 25). On March 24, 2026, Petitioner presented for inspection at the Miami International Airport after receiving advance authorization to travel to the United States under the CHNV parole program. *Id.* ¶ 27. He was inspected by an immigration officer and paroled into the country pursuant to 8 U.S.C. § 1182(d)(5)(A). *Id.*

Petitioner's parole was initially authorized for a period of two years, expiring on March 24, 2026. (DE [9-1]). After completing more than one year of physical presence in

the United States, Petitioner filed a Form I-485 for adjustment of status with USCIS. (DE [1] ¶ 29). That application remains pending. *Id.* ¶ 32.

On July 29, 2026, Immigration and Customs Enforcement ("ICE") encountered Petitioner during enforcement operations. (DE [9-1]). After confirming that Petitioner lacked immigration status in the United States, ICE took Petitioner into custody. *Id.* He was served with a Notice to Appear ("NTA") the following day, charging him as an arriving alien subject to removal under INA Section 212(a)(7)(A)(i)(I). (DE [9-2]). Petitioner was transferred to the Broward Transitional Center in Pompano Beach, Florida, where he currently remains. (DE [9-3]).

## II. LEGAL STANDARD

District courts have authority to grant writs of habeas corpus. 28 U.S.C. § 2241(a). Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). A writ may be issued to a petitioner who demonstrates that he is being held in custody in violation of the Constitution or federal law. See 28 U.S.C. § 2241(c)(3). The court's jurisdiction extends to challenges involving immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. DISCUSSION

This case once again requires the Court to interpret the detention provisions of the Immigration and Nationality Act ("INA"). Petitioner argues that since he was detained in the interior of the country, his detention is governed by 8 U.S.C. § 1226(a) and he is entitled to an individualized bond hearing. He further argues that his detention violates due process. Respondents maintain that Petitioner, as an arriving alien paroled under 8 U.S.C. § 1182(d)(5)(A), is properly detained pursuant to the mandatory detention provisions of 8 U.S.C. § 1225(b).

Relevant here, the INA provides two pathways to detain an alien. First, § 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Federal regulations and Supreme Court precedent confirm that aliens detained pursuant to § 1226(a) are generally entitled to an individualized bond hearing "at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

Second, § 1225(b) provides for detention of aliens classified as "applicants for admission" – defined as an "alien present in the United States who has not been admitted or who arrives in the United States …" 8 U.S.C. § 1225(a)(1). In particular, Respondents insist that Petitioner is subject to mandatory detention under § 1225(b)(2)(A). That provision reads as follows:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A). Eleventh Circuit precedent complicates the matter. In *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Mia.*, 175 F.4th 1258 (11th Cir. 2026), the court concluded that not all "applicants for admission" are necessarily "seeking admission" within the meaning of § 1225(b)(2)(A). That case teaches that an alien is subject to mandatory detention under § 1225(b)(2)(A) only if he:

> (1) is arriving in the United States or is present in the United States without having been granted lawful entry; (2) is seeking lawful entry after inspection and authorization by an immigration officer; and (3) is not clearly and beyond a doubt entitled to [admission], as determined by the examining immigration officer.

*Hernandez Alvarez*, 175 F.4th at 1258. In contrast, those aliens apprehended in the interior who are not affirmatively "seeking admission" are generally subject to detention under § 1226(a) and entitled to a bond hearing. *Id.* at 1278.

Petitioner argues that, under *Hernandez Alvarez*, his detention is governed by § 1226(a), as he was detained in the interior years after he was inspected and paroled into the country. (DE [1] ¶¶ 46-47). But *Hernandez Alvarez* does not reach the facts of this case. There, the petitioners entered the country without inspection or admission (in other words, unlawfully). 175 F. 4th at 1263. Petitioner here, on the other hand, was granted discretionary parole under § 1182(d)(5) after inspection by an immigration officer.

That distinction matters, because when an alien's parole terminates, "the alien shall forthwith return or be returned to the custody *from which he was paroled* and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5) (emphasis added). The critical question, then, is whether Petitioner was subject to § 1226(a) *when he was paroled*. He was not.

Immediately before being paroled into the United States, Petitioner arrived at a port of entry, applied for admission, and was inspected by an immigration officer who determined that he was not clearly and beyond a doubt entitled to be admitted. (DE [11] p. 14). Accordingly, he was then subject to § 1225(b)(2)'s mandatory detention scheme. *See Hernandez Alvarez*, 175 F.4th at 1258. But rather than detaining him for removal proceedings, DHS granted Petitioner humanitarian parole. *See Jennings*, 583 U.S. at 300 (explaining that parole under § 1182(d)(5) is the only mechanism for release from detention under § 1225(b)). And when his parole expired, Petitioner "returned to the custody from which he was paroled"—*i.e.*, mandatory detention under section 1225(b)(2).

*See* § 1182(d)(5); *see also Mesadieu v. U.S. Immigr. and Cust. Enf't*, --- F.Supp.3d ----, 2026 WL 2792854 (S.D. Fla. 2026) (Kuntz J.) (holding revocation of parole returned parolee to prior custody status under section 1225(b)(2)) (collecting cases).

This result is perhaps counterintuitive in light of *Hernandez Alvarez*'s central holding that illegal aliens who are apprehended in the interior and not actively seeking lawful admission are *not* subject to mandatory detention under section 1225(b)(2). *See Hernandez Alvarez*, 175 F.4th at 1269, 1276–79. It is indeed paradoxical that aliens who are paroled into the United States with the government's express permission are afforded *less* protection under the INA than those who sneak across the border and attempt to evade this country's immigration authorities and laws. But because a contrary interpretation and application of section 1182(d)(5) would do violence to its plain language, that is the result binding precedent unfortunately requires.

Petitioner's due process argument fares no better. In *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), the Supreme Court explained that "aliens who arrive at ports of entry—*even those paroled elsewhere in the country for years pending removal*—are 'treated' for due process purposes 'as if stopped at the border.'" *Id.* at 139 (emphasis added). And for those stopped at the border or "detained shortly after unlawful entry," "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Id.* at 139–40 (quoting *United States v. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)). Moreover, the Supreme Court has held that detention for less than six months pending removal, *Zadvydas*, 533 U.S. at 701, and pending removal proceedings, *Demore v. Kim*, 538 U.S. 510 (2003), is presumed reasonable, and therefore constitutional.

Petitioner has been detained for less than six months. Because the Supreme Court has upheld the constitutionality and lawfulness of detention without bond for up to six months, Petitioner's due process rights have not been violated. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that:

1. The Petition (DE [1]) is **DENIED**;

2. The Clerk of Court is directed to **CLOSE** this case, **CANCEL** all hearings and deadlines, and **DENY AS MOOT** any pending motions.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 24th day of November 2026.

RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished to counsel via CM/ECF